Good morning, Your Honor. Good morning, please proceed. May it please the court. The technology at issue today is perhaps less complex than what the PTO sees on a daily basis and what comes before this court every day. However, we believe, the appellants believe, that the board oversimplified the technology at issue and in doing so made several legal errors. The first one I want to talk about is the issue of Claim 1, where Claim 1 specifies a damper plate that's situated within a conduit and then it specifies that the outer periphery of that damper plate defines an area that occupies a majority of, or at least a majority of, but substantially less than all of the inner area of that conduit. Now, there's no dispute that the outer periphery has to be more than, has to occupy more than 50 percent. That follows from the use of the term a majority of, and there's also no dispute that in some embodiments, at least, it can occupy an area that is greater than 80 percent. The board addressed that in terms of claim differentiation. The specification actually addresses that even more clearly by making the explicit statement that says damper plates, according to embodiments at a present invention, have the periphery dimension to occupy less than about 80 percent when closed, although a somewhat larger area... You agree, though, that Claim 1 covers something that's greater than 80 percent of the cross-sectional area? It can, and I think the sense I was... You say it can. It encompasses something greater than 80 percent. That's right. Okay. So, is there anything in the spec that helps us, through definition or something else, understand what does it mean to be substantially less than all of the How do we... What's your proposed construction for the word substantially? Well, I think it's informed, in the first instance, by the application's instant instance. Could you give us an articulation? Because, you know, substantially is a classic fudge word in patent parlance. Let's not kid ourselves. Let's confess and be honest here. So, how do we understand, for this case, how to construe the word substantially less than all? You have to follow the rule that you do go to the specification and find out whether it provides guidance to the person of ordinary skill in the art so they can figure out, without undue experimentation, exactly where the limits of that limitation fall. In this case, the specification first says, okay, we're talking about something that might go over 80 percent, but somewhat. So, I think it's clear from there we're not talking about 90, 95, 98 percent. It gives further guidance... Why not? Just to play devil's advocate. Why not? I think you get that when you read the application as a whole, that it is clear that those would not satisfy the criterion of eliminating clogging around the outer periphery of the damper plate and reducing erosion of the walls. Is there something in the spec that tells us that a plate that covers 95 percent or even 98 percent of the cross-sectional area would defeat the goal of avoiding clogging, avoiding erosion of the walls? There's nothing that explicitly says that, but there are several examples that range from areas of 56 percent up to 80 percent, and then you've got this statement I was just referring to that somewhat larger than 80 percent may be acceptable in some cases. I think that signals pretty clearly to the person of ordinary skill in the art that venturing very far beyond 80 percent will get you into trouble. So, moving on, when the board interprets this claim, they end up interpreting it as effectively... I guess are you saying that 90 percent is outside the claim? I'm saying that a person of ordinary skill in the art would have to decide whether 90 percent was outside of the boundaries of the claim. I believe from the language of the specification that 90 percent is very likely outside the bounds of the claim. Now... The board was, without dispute from you, applying a broadest reasonable interpretation standard here. The whole point of that is to reduce, to the extent possible, the over-deterrence of how a skilled artisan... of what a skilled artisan might decide not to do because, although I'm not sure of the reading, it's reasonable to have... to read it in a certain way. And the problem, I am having, is I don't see what provides a skilled artisan reasonable assurance that anything less than a gap, a phrase used twice in the spec, once in the summary and then once, I think, in paragraph 21, isn't the only reasonable broadest interpretation because anything else is, as you just said, something a skilled artisan, you know, would have to figure out. But how? Well, with regards to how, I think the specification does explain how that's done. It's by factoring in concerns about the clogging around the borders and erosion of the conduit. Why wouldn't it be reasonable for a skilled artisan to read the spec and say, the mentions of avoidance of clogging and erosion are not actually definitional at all. They are merely descriptions of what the inventors are touting as the expected beneficial property of the structures defined only by the area. Right. I think the problem there is that the work substantially is in the claim. So we have substantially less than to deal with. We have to go to the specification to find out what that means. What we've ended up here with is with a claim interpretation that says that anything less than a I think that's what the examiner said and I'm not sure that's wrong. I think the board actually built, seems to have built in a pair of functional qualifications that limit that. I'm not sure that that's right, but I think the board did not just say any gap. They also wanted the skilled artisan to go and figure out whether there was going to be clogging or undue erosion. I don't know. Well, right. They've certainly mentioned clogging and erosion, but then they modified the claim interpretation to say that it needed to provide a gap that would allow an insubstantial amount of fuel to go around the plate and also prevent negligible amount. And also prevent clogging and erosion. Right. But then when they applied it to the priority issue, they completely ignored the clogging and erosion and simply said the Redfield has an area that is less than 100 percent. I tend to agree that that's a problem. If you include in the claim, because the broadest reasonable interpretation, a clogging and erosion problem, I don't see how you get that out of Redfield. Right. But I'm not sure that that clogging and erosion piece of the board's paragraph on this is properly belongs. The examiner didn't have that problem because the examiner said I don't see a stopping point. As long as there's a gap, some skilled artisan might reasonably read the claim to allow any gap. Well, the concerns you raise about whether the claim is an over deterrent, I think are more properly raised in the context of whether that limitation is sufficiently definite to the person of ordinary skill in the art. And in fact, in this case, the examiner originally raised indefinitely. Well, BRI is built on the concern about over deterrence, right? That the right construction is this, but some skilled artisans or competitors or something might reasonably think it's this and therefore not do what's in that gap. And they shouldn't be deterred from doing what's in that gap. Well, I think BRI is more directed towards concerns that the language is necessarily imprecise and during the prosecution phase is when you have the chance to tighten that up. And it certainly would be reasonable, you know, if the if the patent office was concerned about the definiteness to require that it be tightened up. But, you know, again, they did withdraw the indefiniteness rejections and instead move to this claim construction that simply reads the substantially out of the claims. You're right. The board did add back in a mention of the clogging and erosion, but then as applied, ignored that completely and said simply the plate in the prior art is smaller than the conduit and then relied on an actual lack of evidence as to whether there would be any erosion or clogging problems there. If I would, I'd like to move on to the obviousness issues. There the court took as representative claim four, which I think is a good place to be. It specifies that when you consider the perforations in a damper plate, the damper plate as a whole blocks between 40 to 60 percent of the conduit when the damper plate is in a closed position. I don't think there's any dispute that this is quite different than what is shown or discussed in prior art references, Redfield and Miller. Where the board went is to say that, well, the person of ordinary skill in the art would have recognized that holes and gaps around the damper plate would affect damping and therefore it would have been obvious to optimize the damping by adjusting the holes or adjusting the size of those gaps. The problem with that is that there's no identification either in the references or in the board's analysis as to what problem they're trying to solve. And furthermore, there's no reason to for whatever this unknown purpose is that you would end up anywhere close to a plate that only blocks 40 to 60 percent of the conduit. Now in the context of the specific prior art here, we're talking about stovepipe dampers. And I think common sense suggests that a stovepipe damper that at its most damping configuration only blocks 50 percent of the stovepipe is probably not a very effective damper. Did you put on any kind of declaration evidence to explain the unexpected results or the criticality of this particular range of damping? Right. I think the criticality is demonstrated in the specifications description of what the problem is that we're trying to address here. With these holes in the damper plate and with the gap around the plate, we're trying to balance the damping capability, which in this case is not to shut off a stovepipe or open the stovepipe. It is to balance fuel flow between multiple conduits that are supplying a burner. That's described in the specification. We're trying to balance that capability to adjust, do a fine-tuning of damping with a diffusing to avoid this specific problem of coal roping that arises in these conduits. I thought the examiner and you also acknowledged that people of a skill in the art would understand and appreciate the degree of flow dampening effect you would have in the conduit based on the relative size of the plate and the amount of air that you permit to actually flow through or flow past the plate. So on that ground, what we have here is something that's called the result effective variable. Therefore, under the law, it's prima facie obvious to play around with the sizing in order to achieve whatever desired result someone would want. I don't think it's that simple. I think under the law, it's prima facie obvious that you need to show critical results when the prior art reveals general conditions that are essentially the same as what you're talking about in your claim, and in particular with ranges where you have overlapping or very closely abutting ranges. Here, the prior art shows damper plates that, while it doesn't discuss the actual dimensions, appear to occupy substantially all of the inner area of the conduit. Counsel, you're well into your rebuttal time. We've asked you a lot of questions, so I'll restore a couple minutes of it, but if you keep going, it's at your peril. I appreciate that. So I don't think that the cases that support this notion of having to provide criticality or unexpected results apply when there is no showing that the prior art is even in the same vicinity as the claims at issue. Thank you very much. Thank you, Your Honors, and may it please the Court. I have a few points to make. As to the word substantially, it's really broad, and the examples in the specification that go to percentages, specifically inviting the Court's attention to page 33 of the record, and on those percentages, on 33, 76 percent, that goes to Claim 3. Less than about 80 percent, that goes to substantially. I guess the other side is saying that those examples underscore that what substantially less than all means, or should be understood to mean, is something far less than 100 percent, something much closer to the examples that are provided, which are all in the 50 to 80 percent. I respectfully no, Your Honor, because the Board did a claim construction using Applicant Specification, paragraph 21 in the specification, in particular, that just said that pulverized particles have to get through a gap, and these pulverized particles are really and Redfield has two gaps, and Miller teaches multiple holes, so you have pulverized particles going at the plate. If you look at, on page 7 of our Redfield, Redfield is depicted there and has two gaps, and what the Board was saying was there will be instances where a smaller gap will suffice, given this broad claim and what's in the specification. There needs to be some flow going around the plate, right? Yes, Your Honor. And the Board said an insubstantial amount of flow, and you know, it wasn't clear to me why the Board was justified in concluding that having a damping plate that is substantially less than all of the cross-sectional area translates to permitting merely an insubstantial amount of airflow around the edges of the plate. I mean, why did they say it like that? Because there will be times where a lot of the some left, so at a bare minimum what the Board was saying here... I guess what I'm trying to say is insubstantial amount of airflow around the edges of the plate suggests a really big plate that covers virtually everything of the cross-sectional area of the plate. Well, respectfully, again, no, Your Honor, because this part of the Board's opinion is going towards the particles, what is to get through. And we know for a fact, based on this record, that the Board was definitely not saying almost all of the cross-section or virtually all of the cross-section to leave an insubstantial airflow left, because Redfield, and Miller for that fact, Redfield has dual gaps above and below, and that was a 1893 reference that had both holes and gaps, and if anything, substantially less than can mean, and Redfield would likely infringe if it issued later, that insubstantial particles or particles left not going through the perforations, and that's what the Board was reasonably saying, and the Board expressly considered applicants' argument and specification language that if the only function of the gap is to permit or avoid clocking, let me say it correctly, avoid clocking, therefore, there will be times, and what the Board was saying was, in addition, the gap is sufficient. So this is the bare minimum part that the Board said it has to, per the specification, and the specification is broad, does not limit the particle size or the size of the substantially less than gap, it says that the gap is sufficient. It has to, at a bare minimum, allow an insubstantial amount of pulverized fuel, and what we're talking about, and there are depictions also in the specification at figures 3 and 4 where these particles, and this is on page 46 and 47 of the record, but these particles are spread out, there's no requirement in the specification of a rate of Let me try again. I guess my concern is when the Board said that substantially less than all of the cross-sectional area means that the plate can be so big, fat, and wide, that only an insubstantial amount of the fuel flow can go around the edges, that seems to really bias the understanding of the claim to encompass something that virtually covers the entire cross-sectional area, and if that's the case, I wonder why is that consistent with a description of a plate that's substantially less than all of the cross-sectional area? Again, Your Honor, the Board didn't say that it has to be almost the size of the pipe. The Board said there has to be a gap, and the gap functions per the specification. After the Board just discussed applicant specification, it said that something has to get through without clogging, so the Board was giving fidelity to the specification that clogging is to be avoided, and then what the Board went on to say was that we have Redfield, which has multiple gaps and perforations shown in Miller, where you can have multiple perforations, one or more expressly in Miller, so even applicant specification envisions the scenario where only very little must go through the gaps, and that's what led to the Board saying... Where did Mr. Ferry's application disclose that, that only very little can go around the edges? No, Your Honor. There are two steps to get to that. Avoid clogging, and on page 31 to 32 of the record, the specification discusses that pulverized particles will go through the perforations. The feature of this invention, more so than the gap, are the perforations that the particles will go through the perforations, and the specification expressly says rather than around it. That's at the top of page 32. So instead of going around it, it goes through, and the Board discussed that and reasonably said that what you need is a sufficient gap, and that's why we analyzed it in our brief as at least you have to have a gap that some particles can get through, and giving credence to the specification, clogging will be avoided, and that was a reasonable construction by the Board. This applicant knows how to articulate numbers. They're in a lot of the dependent claims, and claim one is really broad. It's still during prosecution. He may be able to amend that down and though try to submit evidence of unexpected results or something else to show that what he's really doing as one can see in reviewing the claims on page 100-101 is that he's changing the size of the plate in the gaps, and it just says a plurality of perforations which are in Miller and Redfield, and all that's going on here is a changing of the variable of plate size in the pipe which yields, as KSR says, predictable results. You know that when you reduce the size of the plate, add more holes, you're going to get more airflow. If you increase it, you may get less airflow. So nothing unexpected is happening here. And I guess the basis for the rejection of claims three through six, which had all these different that reasoning applies equally to broad claim one, which is also just about the range and the size of the plate. It could, your honor. That is consistent with what the Board did. The Board said we're going to consider and construe substantially in light of the specification and what the purpose is. And the purpose was to avoid clogging, but we have the perforations to help do that as well. And these pulverized particles, as I mentioned before, when they're depicted in figures three and four of the application, they're like little arrows. And they're spread out in terms of going through the cross-sectional area, and they have a frequency that permits even one at a time to get through. So his own drawings show that. And could he have or run some experiments and submitted some evidence countering the prima facie case of obviousness here that should these claims issue? They're very broad. And this is what this court's case law goes to when you have similar structure in prior art references establishing a prima facie case. You've maybe said this already. What's the prima facie case that Redfield teaches no clogging, no erosion? That there are two gaps, and it shows that things get through both the perforations and the gaps. And then when you consider Redfield in light of applicant specification, in the specification, all you have to do is avoid clogging. So then you consider, well, what's trying to go through? And as we discussed in our brief, the particles, as shown in figures three and four of his specification, are really small. They are pulverized. And they are almost sporadic when you look at, again, if he changed, and maybe you'd have to get a new application finally, but if he changed things such as the particles and the rate of flow and things like that, or ran experiments showing the prior art against his broad claim, then you might... Let me see if I can... This may just be confusion on my part. I guess what I keep hearing is if you look at Redfield, there is a gap. So inherently, no clogging, no erosion. Yes. Because otherwise, I mean, there's nothing in Redfield. It's one page about clogging and erosion. So what does that add? Why did the board think that that was a proper addition, a meaningful addition to its claim construction if there's always no clogging, no erosion? Well, the board actually... In its claim construction... In what way does what I think the examiner said, but it doesn't matter whether the examiner said this, any gap will do. Well, the board didn't say that. The board said insubstantial, no clogging. I agree the board didn't say that. Redfield, it seems to me, teaches any gap. Full Stop doesn't teach anything about clogging or erosion. So I don't see the prima facie case if clogging and erosion have any meaning at all. Well, because, Your Honor, when you look at Redfield on page seven of our brief, I mean, that's a not insignificant gap. It's not just like parallel lines really close together. It is for this application, pulverized particles which have no restriction as to size or rate of flow that here you have, and respectfully inviting the court's attention to... All Redfield actually says in, I guess we can call it the written description. I don't know if that language is appropriate, but is the edges of the damper are freed from contact with the pipe and the damper is of a smaller diameter than that of the interior of the pipe. Any gap. I mean, if you're going to draw a picture, you got to have a gap that's at least what it is in figure one, or you wouldn't even see that there's a gap. So I don't read anything into the size of the gap in figure one. And the written description just says, don't have contact. So I guess I just keep wondering either clogging and erosion are meaningless, or if they're meaningful, I don't see it being taught in Redfield. They are meaningful to the extent that there are any remaining particles that did not go through the perforations. And as the board said, these particles can go around. And as get through Redfield's gap, at least shifting the burden to come back and either amend your claim with unexpected results or show us something unexpected, because here Redfield and Miller have space in between, and it's not specified how much has to go through these gaps. I guess the idea is... And gap is not in the claim. The construction to avoid clogging and erosion is a goal that was identified and specified in the specification, which is why the board used that as part of the claim construction. But the specification doesn't go further as to what really is needed to avoid clogging and erosion. And if we're talking about something like smoke, well, smoke doesn't need a very big gap in order to move through and past an obstruction. I absolutely agree, Your Honor. Or I can add to that, something that is pulverized. This application says this coal is pulverized, which means crushed. It is really small. And applicant specification shows these really small particles, which is why the board and examiner thought that a prima facie case was established based on Redfield and Miller that have gaps, and the applicant should at least have to... Okay, Mr. Piccolo, we're well over our time. I need to let opposing counsel have this rebuttal. Thank you, Your Honor. I have an extra minute, so please, because Mr. Piccolo went over. Thank you, and I'll be very brief. First, with regards to the size of the particles, I don't think that the figures in the specification purport to describe the size or even the density of the particles. Those figures instead just show where the paths of flow can occur. And in fact, the board made no findings at all on the size of the particles, and there really is no basis in the board's decision or the record for adding the size or adding the language suggesting that it's only necessary for an insubstantial amount of fuel to flow around the damper plate. With regards to the prima facie case, with respect to claims that specify ranges, I do think we need to fall back on KSR versus the prior art to arrive at the claimed invention. The cases that are cited that deal with the criticality of ranges, whether it's Woodard or Enright-Bash or so on, they're not inconsistent with that because they describe situations where the range overlaps or the range abuts it, and they also explicitly describe situations where the goals of optimization or the problems that are being solved are exactly the same. Here, the problems in a stovepipe damper are quite different than the problems you might find. But there are cases, I mean, of course, there's cases like Woodruff and others that talk about when you have an overlapping range or abutting ranges, that's prima facie obvious, but then there's other cases where you don't need an abutting or overlapping range. You could just have an appreciation that a given attribute has a certain property connected to it, and then once people of skill in the art understand that, then it becomes prima facie obvious to play with that attribute, whether it's a weight percentage or a temperature or a size, to move it around back and forth to land at a particular number that is your particular preference. Well, and I agree, but the issue is that there's no reason to believe that anybody's particular preference in the stovepipe art is going to be something that is 40 to 60 percent obstructed, as specified by Claim 4. There has to be... But that's the rebuttal that you have to make in this line of work. I don't think... I think otherwise, though, you do run afoul of KSR's rule that there has to be a reason for performing the modification. We don't do these optimizations without a goal in mind. It is true that it will affect flow damping, but there's nothing in the evidence to suggest what an optimal level of flow damping is, and in fact, all of the cited references show or suggest that a maximal flow damping that is desired is one that comes from a damper plate that occupies pretty much all of the conduit area. Okay, counsel, I think we have your argument. I thank both counsel for the arguments today, and this case is submitted.